# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 6067 | DATE | MARCH 18, 2004 |
| CASE TITLE | MINUTEMAN INTERNATIONAL, INC. v. GREAT AMERICAN INSURANCE COMPANY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ STATUS HEARING SET FOR APRIL 28, 2004 AT 11:00 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Defendant's motion to dismiss [5-1] is granted in part and denied in part. Counts I and II of the Complaint are dismissed in part to the extent they seek damages for expenses related to plaintiff retaining a Chief Accounting Officer and additional auditor. Count III of the Complaint is dismissed in its entirety. Within 20 days, defendant shall answer the remaining allegations of the Complaint. All discovery is to be completed by April 27, 2004.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 2 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | 3-22-04 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 3/18/2004 date mailed notice | |
| cw | courtroom deputy's initials | mmq mailing initials | |

Minute Order Form (06/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MINUTEMAN INTERNATIONAL, INC.,      )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )      No. 03 C 6067
                                    )
GREAT AMERICAN INSURANCE            )
COMPANY,                            )
                                    )
                    Defendant.      )

## MEMORANDUM OPINION AND ORDER

        This case involves a dispute over insurance coverage for
expenses related to a Securities and Exchange Commission ("SEC")
investigation which concluded with the entry of an agreed cease-
and-desist order with affirmative action provisions.  Plaintiff
Minuteman International, Inc. was investigated by the SEC and
subsequently entered into an agreement with the SEC to undertake
certain corrective action.  Defendant Great American Insurance
Company declined to pay any "Costs of Defense" or possible "Loss"
on the ground that the SEC investigation was not a "Claim" as
that term is used in the parties' insurance policy.  Presently
pending is Great American's motion to dismiss.

On a Rule 12(b)(6) motion to dismiss, plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert. denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). Plaintiffs in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Scott,

195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it. Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Carpenter v. City of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996). As long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth, 199 F.3d at 368; Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered even if not attached to the complaint. Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993); Hebein ex rel. Berman v. Young, 37 F. Supp. 2d 1035, 1038-39 (N.D. Ill. 1998). This may include the full text of an SEC filing or document that is integral to the complaint. See Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360-61 (6th Cir. 2001); Ehlert v. Singer, 245 F.3d 1313, 1316 n.4

(11th Cir. 2001); <u>San Leandro Emergency Medical Group Profit</u>
<u>Sharing Plan v. Philip Morris Cos.</u>, 75 F.3d 801, 808-09 (2d Cir.
1996); <u>Abrams v. Van Kampen Funds, Inc.</u>, 2002 WL 1160171 *2 (N.D.
Ill. May 30, 2002); <u>In re Newell Rubbermaid Inc. Securities</u>
<u>Litigation</u>, 2000 WL 1705279 *3 n.2 (N.D. Ill. Nov. 14, 2000).

  The following facts are taken to be true for purposes of
ruling on defendant's motion to dismiss. For the pertinent time
period, plaintiff had a "claims made" directors and officers
liability policy with defendant (the "Policy"). On November 13,
2001, the SEC issued an order entitled "Order Directing a Private
Investigation and Designating Officers to Take Testimony" (the
"2001 Order"). The 2001 Order stated that SEC staff had reported
information indicating that, in connection with securities
transactions, Minuteman officers and others may have made false
or misleading statements, failed to keep accurate records and
accounts, and failed to implement and maintain a system of
internal accounting controls. The 2001 Order directs that a
private investigation be undertaken as to these matters and the
Order empowers specified individuals to administer oaths and
affirmations, subpoena witnesses, etc., in order to conduct this
investigation.

  A subpoena dated November 21, 2001 was served on
plaintiff and certain of its officers and employees requiring
appearances for depositions and the production of specified

categories of documents. On January 22, 2002, written notice of
the investigation and subpoena was provided to defendant.
Plaintiff expended in excess of $57,000 complying with the
document production aspect of the subpoena. Additional subpoenas
requiring more depositions and document production were also
issued. Deponents retained counsel and defendant reimbursed the
deponents for their legals fees, which was an amount in excess of
$418,000. Plaintiff contends these two expenses qualify as
"Costs of Defense" under the Policy.

On May 31, 2003, the SEC entered a cease-and-desist order
making findings and imposing "undertakings" under the Securities
and Exchange Act of 1934. This order was based on the acceptance
of plaintiff's offer to settle the matter without admitting or
denying the findings contained in the cease-and-desist order.
The findings included that certain earnings were misstated.
Plaintiff and certain officers were ordered to cease and desist
from engaging in securities law violations. Plaintiff was also
required to: (1) employ, for five years, a Chief Accounting
Officer who would be responsible for reviewing filings with the
SEC and be responsible for all financial reporting; (2) implement
written internal procedures to ensure quarterly sales were
recorded in accordance with generally accepted accounting
principles; and (3) retain an additional auditing firm to conduct
quarterly audits and review internal controls. It is alleged

that the Chief Accounting Officer and additional auditor will cost an estimated $420,000 or more. Plaintiff contends this expense is a "Loss" from a "Settlement" under the terms of the Policy.

In response to plaintiff's January 22, 2002 notice, defendant stated that it was proceeding under a reservation of rights. Plaintiff continued to keep defendant advised of the SEC proceedings and continued to maintain that the proceedings constituted a Claim under the Policy. Defendant took the position that it was not a Claim and eventually denied plaintiff's request for reimbursement.

In its motion to dismiss, defendant contends no aspect of the SEC proceedings constitutes a "Claim" as that term is used in the Policy. Even if the Claim requirement is satisfied, defendant contends neither the cost of the Chief Accounting Officer nor the cost of the additional auditor qualifies as a "Loss" as that term is used in the Policy. Defendant does not presently dispute that the other expenses would qualify as Costs of Defense if the SEC proceedings constitute a Claim.

Section III of the Policy is entitled "Definitions."[1] It includes the following two definitions:

---

[1] All bold-face terms appear as such in the Policy and are terms defined in the definitional section of the Policy.

**A.** **"Claim"** shall mean:

(1) a written demand for monetary or non-monetary relief made against any **Insured** . . .; or

(2) a civil, criminal, administrative or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body.

\* \* \*

**P.** **"Securities Claim"** shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(1) brought by any person or entity alleging, arising out of, based upon or attributed to, in part or in whole, the: (a) purchase or sale, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or . . . .

A definition for "Loss" is set forth in § III.L. of the Policy, but the definition in the body of the Policy is superseded by one or more definitions contained in two endorsements. The "Illinois Amendatory Endorsement," which is labeled "Endorsement 1," provides in part:

In compliance with the insurance regulations of the state of Illinois, the following provisions are hereby added to the Policy. In the event that a similar provision is already contained in the Policy, the provisions of this endorsement shall take precedence over such similar provision.

\* \* \*

8.   It is understood and agreed that Section
III.L. of the Policy is hereby deleted and
replaced with the following:

Section III.L.  **"Loss"** shall mean compensatory
damages, punitive or exemplary damages, the
multiple portion of any multiplied damage award
(in Illinois only vicariously assessed punitive
damages are insurable), settlements and **Costs of
Defense**, provided, however, **Loss** shall not
include criminal or civil fines or penalties
imposed by law, taxes, or any matter which may be
deemed uninsurable under the law pursuant to
which this Policy shall be construed.  It is
understood and agreed that the enforceability of
the foregoing coverage shall be governed by such
applicable law which most favors coverage for
punitive or exemplary damages or the multiple
portion of any multiplied damage award.  **Loss**
shall also not include any portion of damages,
judgments or settlements arising out of any **Claim**
alleging that the **Company** paid an inadequate
price or consideration for the purchase of the
**Company's** securities.

The only language difference between the definition of Loss

contained in the endorsement and the definition contained in the

body of the Policy is the addition of the parenthetical language

regarding vicariously assessed punitive damages.

There is another endorsement entitled "Insured Entity

Coverage."  This endorsement is labeled as "Endorsement 2" and

states in part:

2.   Section III.L. of the Policy is amended by
the addition of the following:

**Loss**, other than **Costs of Defense**, shall also not
include:
(1)   any obligation of the **Insured Entity**
pursuant to any federal, state or local statutory

law governing employment or benefits including
but not limited to  . . .;
(2)  any obligation of the **Insured Entity** as a
result of a **Claim** seeking relief or redress in
any form other than money damages, including but
not limited to any obligation of the **Insured
Entity** to modify any building or property; or
(3)  any obligation of the **Insured Entity** to pay
salary, wages or other employment-related
benefits to any employee under an express or
implied contract;

The parties dispute the meaning of the term "Claim," as
used in the Policy.  More specifically, the central aspect of the
parties' dispute is the meaning of the phrase "non-monetary
relief."

Although not in any way inconsistent, the definition of
the term "Securities Claim," need not be construed in order to
resolve the pending motion.  The definition of "Securities Claim"
fully incorporates the definition of Claim, "a '**Securities Claim**'
shall mean any **Claim**."  A Securities Claim is simply a particular
type of Claim.  Other provisions of the Policy provide for
special rules applicable to Securities Claims, but not applicable
to all other types of Claims.  Defendant does not presently rely
on any of those provisions.  As long as the SEC proceedings
constitute a Claim, there is coverage regardless of whether the
Claim also falls into the subcategory of being a Securities
Claim.

Defendant does not dispute that the SEC proceeding met the requirement of being a "written demand" (§ III.A.(1)) and/or an "administrative . . . proceeding" (§ III.A.(2)). The word "relief" is not further defined in the Policy.

The parties agree that Illinois law applies to their dispute. In construing terms of an insurance policy, the terms must be considered in the context of the entire policy and the parties' intentions. If language is unambiguous, it should be given its plain, ordinary, and popular meaning; language should not be distorted to create an ambiguity or support a desired result. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 757 N.E.2d 481, 491 (2001); Wallis v. Country Mutual Insurance Co., 309 Ill. App. 3d 566, 723 N.E.2d 376, 381 (2d Dist.), appeal denied, 189 Ill. 2d 682, 731 N.E.2d 772 (2000); Tribune Co. v. Allstate Insurance Co., 306 Ill. App. 3d 779, 715 N.E.2d 263, 268 (1st Dist.), appeal denied, 186 Ill. 2d 590, 723 N.E.2d 1170 (1999). However, if there is an ambiguity, it must be strictly construed against the insurer and in favor of coverage. Eljer, 757 N.E.2d at 491.

Defendant contends an SEC investigation is not a proceeding in which relief is sought. Defendant draws a dichotomy between seeking relief in the form of monetary damages, injunctive-type sanctions, or criminal charges and performing the investigation that leads up to a request for that type of relief.

Plaintiff has a broader view of relief. Plaintiff contends that the relief sought by the 2001 Order and subsequent subpoenas was the subjects' responses, that is a subject of a subpoena appearing to provide testimony or a subject responding by providing documents. Furthermore, it is asserted that the cease-and-desist order does impose the type of sanctions that defendant considers to be relief.

No case has been cited or found which involves an insurance policy with the exact same definition of "claim" and the question of whether an agency's investigative proceedings constitute a claim. Defendant relies on <u>Foster v. Summit Medical Systems, Inc.</u>, 610 N.W.2d 350 (Minn. Ct. App. 2000) ("<u>Foster</u>").[2] In that case, the policy defined a Securities Action Claim as including an administrative proceeding relating to the sale of securities "in which [the insureds] may be subjected to a binding

---

[2]Defendant also cites an unpublished decision of a California Court of Appeal. Unpublished decisions of other courts are not to be considered to the extent the rules of the issuing court prohibit consideration of the unpublished decision. <u>Aetna Casualty & Surety Co. of Hartford, Conn. v. Kerr-McGee Chemical Corp.</u>, 875 F.2d 1252, 1255 n.2 (7th Cir. 1989); <u>Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.</u>, 98 F. Supp. 2d 958, 959 n.1 (N.D. Ill. 2000). <u>See also</u> <u>Doty v. Doyle</u>, 182 F. Supp. 2d 750, 752 n.3 (E.D. Wis. 2002). California rules do not permit unpublished appellate court decisions to be considered, even for their persuasive value. Cal. Ct. R. 977; <u>People v. Russo</u>, 25 Cal. 4th 1124, 25 P.3d 641, 646 n.1 (2001); <u>In re Antablian</u>, 140 B.R. 534, 536-37 (Bankr. C.D. Cal. 1992). The unpublished California Court of Appeal case that is cited by defendant will not be considered.

adjudication of liability for damages or other relief." Id. at
354. The Policy presently before the court does not define
Claim as requiring that a "binding adjudication of liability"
be sought. The Policy only requires a "demand for . . .
non-monetary relief" or an "administrative proceeding . . .
seeking . . . non-monetary relief." Policy § III.A.(1), (2).

The Foster decision focused on the use of "relief" in
defining claim, but considered it as part of a phrase that
included "binding adjudication." See Foster, 610 N.W.2d at
354 ("The parties agree that the SEC investigation is an
administrative proceeding but dispute whether it is a proceeding
in which respondents 'may be subjected to a binding adjudication
for * * * relief.'" ). The Foster court took a narrow view of
"relief," construing it in the context of an adjudication, which
was appropriate given the language of the policy there under
consideration.

> Respondents argue that the investigation
> satisfies this requirement because the SEC issued
> a subpoena duces tecum. But the ordinary
> understanding of the term "relief" is assistance
> or something that lessens pain or discomfort.
> See American Heritage Dictionary 1044 (2d ed.
> 1976). In a legal context, the term "relief"
> refers to redress or benefit, especially
> equitable redress such as an injunction or
> specific performance. See Black's Law Dictionary
> 1293 (7th ed. 1999). Issuing a subpoena does not
> fit within either meaning of the term "relief."
> See City of Thief River Falls v. United Fire &
> Cas. Co., 336 N.W.2d 274, 276 (Minn. 1983)
> (holding that petition for mandamus to compel
> city to initiate condemnation proceedings was not

a "suit * * * seeking damages" within the plain
meaning of the insurance policy because its
essence was to secure performance of a legally
required act rather than provide damages).

Foster, 610 N.W.2d at 354.

Defendant also cites Center for Blood Research, Inc. v.

Coregis Insurance Co., 305 F.3d 38 (1st Cir. 2002). In that

case, the United States Attorney served an investigative subpoena

on the insured under authority of the Health Insurance

Portability and Accountability Act of 1996, 18 U.S.C. § 3486.

The insured was not a target of the investigation and was not

charged civilly or criminally, though one of its employees did

subsequently plead guilty to taking kickbacks. The definition of

"claim" in the policy included "any judicial or administrative

proceeding in which any INSURED(S) may be subjected to a binding

adjudication of liability for damages or other relief." See id.

at 40-41. In holding that there was no claim, the First Circuit

focused on the lack of an adjudication for liability, see id. at

42-43, which is not part of the definition of Claim in the Policy

pertinent to the pending case. Coregis is readily

distinguishable from the present case.

Plaintiff cites to Richardson Electronics, Ltd. v.

Federal Insurance Co., 120 F. Supp. 2d 698 (N.D. Ill. 2000).

That case involved a Justice Department investigation of possible

criminal antitrust violations, including service of a civil investigative demand with various interrogatories and subpoenas requiring the production of documents and testimony. See id. at 700. It was held that the investigation itself constituted a claim under the claims-made policy at issue. Id. at 701. The policy did not define "claim," so the court followed Illinois law which construes "claim" in a claims-made insurance policy as being an actual demand for something due. Id. (quoting Central Illinois Public Service Co. v. American Empire Surplus Lines Insurance Co., 267 Ill. App. 3d 1043, 642 N.E.2d 723, 725-26 (1st Dist. 1994), appeal denied, 161 Ill. 2d 524, 649 N.E.2d 414 (1995)). There was no requirement that the demand be for money. Being required to comply with demands for testimony and production of documents was a demand for something due that constituted a claim. Richardson, 120 F. Supp. 2d at 701. Defendant attempts to distinguish Richardson on the ground that claim was not defined in the policy at issue, but the common law definition applied (an actual demand for something due) is very close to the Policy's "demand for . . . relief."

In Polychron v. Crum & Forster Insurance Co., 916 F.2d 461 (8th Cir. 1990), the issue was whether a grand jury investigation constituted a "claim" under a claims-made policy. A grand jury subpoena was served on a bank. The subpoena sought documents related to the time period when Polychron was the

bank's president and Polychron was subsequently questioned by a prosecutor and Internal Revenue Service officers. Polychron was eventually indicted, but was acquitted. As an insured under the policy at issue, Polychron sought reimbursement for his legal expenses during the investigation phase. The policy did not define "claim," but the court indicated it meant "[t]o demand as one's own or as one's right; to assert; to urge; to insist," not just "cause of action." Id. at 463 (quoting Black's Law Dictionary (5th ed. 1979)). Referring to the district court's use of "cause of action" as the definition, the Eighth Circuit held:

> the term "claim" has a broader definition. We believe that definition encompasses the first grand-jury investigation of Mr. Polychron. The function of a subpoena is to command a party to produce certain documents and therefore constitutes a "claim" against a party. The subpoena, it is true, was directed to the bank, but the documents demanded (not merely requested, as defendants would have it) related to the plaintiff's conduct as a bank official. Further, the grand jury's investigation and the questioning by the Assistant United States Attorney amounted, as a practical matter, to an allegation of wrongdoing against Mr. Polychron, for which he prudently hired an attorney. The defendants' characterization of the grand-jury investigation as mere requests for information and an explanation underestimates the seriousness of such a probe. As later events proved, the plaintiff was the target of the investigation.

Polychron, 916 F.2d at 463.

The St. Paul Mercury Insurance Co. v. Foster, 268
F. Supp. 2d 1035, 1046-48 (C.D. Ill. 2003) ("St. Paul"), case
involves a factual setting distinguishable from the present case,
but policy language close to that in the Policy. The policy in
the St. Paul case defined "claim" as including a "written demand
against any insured for monetary damages or other relief." See
id. at 1046. In St. Paul, an attorney representing employees in
an employee stock ownership plan ("ESOP") wrote a letter to ESOP
officials requesting plan documents. The letter also refers to a
drop in share values and a need for facts and documentation
material to protecting the interests of the attorney's clients.
See id. at 1047. The court held that such a request for
information, even with allusions to a potential basis for a
lawsuit, did not constitute a claim under the policy's
definition. Id. at 1047-48. St. Paul distinguished the
situation in Richardson on grounds that would also distinguish
St. Paul from the present case. "[T]he third-party demanding
documents in [Richardson] was the Department of Justice serving a
Civil Investigative Demand and subpoena, and the seriousness of
such an investigation was clearly material to the district
court's determination . . . . The fact that th[e] particular
inquiry [in St. Paul] purports to request information pursuant to
ERISA does not transform an otherwise ordinary request for
information into the substantive equivalent of a Department of

Justice subpoena or Civil Investigative Demand." St. Paul, 268
F. Supp. 2d at 1047, 1048. Also, unlike the present case and the
other cases that have been cited, in St. Paul, finding that there
was not a claim favored the insured, not the insurer. Thus,
unlike the present case, any doubts should have been resolved in
favor of finding no claim.

The present case involves SEC orders and SEC subpoenas.
If plaintiff or any of its employees had failed to comply with
the subpoenas, the SEC could have brought suit in court to
require compliance with the subpoena. See 15 U.S.C. §§ 78v(b),
78u(c). The "relief" that could have been granted in such a
proceeding would have been requiring plaintiff and/or its
employees to produce documents and/or appear for a deposition.
See Penfield Co. of Cal. v. SEC, 330 U.S. 585, 590 (1947). See
also Commodities Futures Trading Commission v. Collins, 997 F.2d
1231, 1232 (7th Cir. 1993) (enforcement of CFTC subpoena). The
Policy's definition of Claim is not limited to a lawsuit. Claim
also includes a "written demand." Just as being required to
produce documents or provide testimony would be relief in a court
proceeding seeking enforcement of an SEC subpoena, the relief
sought by the subpoena itself is the production of documents or
testimony. Consistent with Richardson and Polychron, the 2001
Order and subsequent subpoenas served on plaintiff were demands
for relief in that they were demands for something due. A demand

for "relief" is a broad enough term to include a demand for something due, including a demand to produce documents or appear to testify. Moreover, as indicated in <u>St. Paul</u>, an SEC subpoena is not a mere request for information, but a substantial demand for compliance by a federal agency with the ability to enforce its demand. The investigative proceedings at issue in the present case constituted a Claim as that term is used in the Policy. The Costs of Defense claims will not be dismissed.

Still to be considered is defendant's argument that the expenses of the Chief Accounting Officer and additional auditor required by the cease-and-desist order do not constitute a "Loss" as that term is used in the Policy. This dispute boils down to the question of whether the Loss definition provisions contained in the Insured Entity Coverage endorsement (Endorsement 2) is part of the Policy. If it is part of the Policy, plaintiff raises no argument that those expenses would not qualify as a Loss because the expenses are an obligation of plaintiff as a result of a Claim seeking relief or redress in a form other than money damages. Plaintiff contends the Loss provision of the Insured Entity Coverage endorsement is not part of the Policy because the Illinois Amendatory Endorsement (Endorsement 1) overwrote any similar provisions, including the Loss definition in the Insured Entity Coverage endorsement. Defendant contends the Illinois Amendatory Endorsement simply replaced the Loss

definition in the body of the Policy by adding one phrase and did not affect the additions to the Loss definition contained in the Insured Entity Coverage.

A policy and its endorsements are to be construed together in determining the meaning and effect of the insurance contract. Rockford Mutual Insurance Company v. Economy Fire & Casualty Co., 217 Ill. App. 3d 181, 576 N.E.2d 1141, 1144 (5th Dist. 1991). If possible, effect is to be given to all parts of a policy, including endorsements. Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co., 240 Ill. App. 3d 598, 608 N.E.2d 155, 158 (1st Dist. 1992). Where a conflict exists between the body of the policy and the provisions of an attached endorsement, the endorsement will control. Tribune, 715 N.E.2d at 268; Central Illinois, 608 N.E.2d at 159; Rockford Mutual, 576 N.E.2d at 1144-45. Similarly, if there are two inconsistent endorsements and one endorsement is subsequent to the other endorsement, the later endorsement generally will control. INA of Texas v. Leonard, 714 S.W.2d 414, 416-17 (Tex. Ct. App. 1986); John Beaudette, Inc. v. Sentry Insurance, 94 F. Supp. 2d 77, 142 n.90 (D. Mass. 1999); Couch on Insurance § 21:21 (2003); John Alan Appleman & Jean Appleman, Insurance Law & Practice, § 7538 at 165 (1976). However, if no basis exists for favoring one endorsement over the other and the two endorsements are irreconcilably inconsistent

with each other, the general rule would be followed of resolving the ambiguity in favor of the insured.  See Reisman v. Coleman, 193 A.D.2d 659, 598 N.Y.S.2d 12 (1993); INA, 714 S.W.2d at 417; Rusthoven v. Commercial Standard Insurance Co., 387 N.W.2d 642, 644-45 (Minn. 1986).

The Illinois Amendatory Endorsement (Endorsement 1) is the first endorsement added to the body of the Policy.  As is stated at the beginning of this endorsement, the nine provisions contained therein take precedence over similar provisions "already contained in the Policy."  This beginning paragraph also states that the provisions contained therein are being added in compliance with Illinois insurance regulations.  As indicated by this beginning paragraph, the intent of this endorsement is to conform defendant's standard policy form with the requirements of Illinois law.  Thus, § 8 of this endorsement adds language to the definition of Loss that conforms to Illinois case law that limits coverage for punitive damages to those that are assessed vicariously.  See International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co. of Ill., 209 Ill. App. 3d 144, 568 N.E.2d 9, 17 (1st Dist. 1990), appeal denied, 141 Ill. 2d 542, 580 N.E.2d 116 (1991); Warren v. Lemay, 144 Ill. App. 3d 107, 494 N.E.2d 206, 212 (5th Dist. 1986); United States Fidelity & Guaranty Co. v. Open Sesame Child Care Center, 819 F. Supp. 756,

761 (N.D. Ill. 1993); <u>GTE North Inc. v. First State Insurance Co.</u>, 1990 WL 186470 *3 (N.D. Ill. Oct. 25, 1990).

Endorsement 1 takes precedence over the Loss definition "already contained in the Policy," that is, the definition contained in the body of the Policy. This endorsement does not state that it takes precedence over subsequent provisions, that is, the provisions contained in Endorsement 2 (Insured Entity Coverage) which followed. Further, there is no contention that the language added to the Loss definition by Endorsement 2[3] is inconsistent with Illinois law and thus inconsistent with the purpose of Endorsement 1. Moreover, it would be unreasonable to read the beginning paragraph of Endorsement 1 as absolutely preventing any possible amendment or further endorsement regarding any of the subject matter covered by the nine provisions in Endorsement 1. Construing the Policy, together with its endorsements, the definition of Loss consists of the language contained in § 8 of Endorsement 1 and the additional language contained in § 2 of Endorsement 2. In accordance with the added language of subsection (2), the expenses for the Chief Accounting Officer and additional auditor are not a Loss for which plaintiff could be entitled to reimbursement. Plaintiff's

---

[3]Endorsement 2 adds language to the definition of Loss, but it does not add coverage. Instead, the additional language contains exclusions from the definition of Loss.

claims will be dismissed to the extent they seek such reimbursement.

Defendant also moves to dismiss Count III of the Complaint, which, pursuant to 215 ILCS 5/155, seeks attorney fees and a penalty for unreasonable and vexatious delay in paying insurance proceeds. Taking an unsuccessful position is not enough to impose a penalty under this provision; the insurer's behavior must be willful and without reasonable cause. Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 200 F.3d 1102, 1110 (7th Cir. 2000). "[A]n insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." Id. (citations omitted; emphasis added).

On the facts alleged in the complaint, defendant's argument that the SEC investigation was not a Claim has been rejected. However, it was not unreasonable for defendant to argue otherwise. There is no case on point which decides whether an SEC investigation constitutes a Claim under the particular language of the Policy. There are cases, involving other policy language, that hold an SEC investigation or other similar agency investigation does not qualify as a claim and those cases contain

some reasoning that supports defendant's position.  Although those
cases were distinguished and defendant's arguments were rejected,
reasonable litigants could differ.  On the facts alleged, it could
not be found that defendant took an unreasonable and vexatious
position.  Count III will be dismissed.

This does not appear to be a case that requires much, if
any, discovery.  In the event some is necessary, however, a short
period for discovery will be permitted.  It may very well be,
though, that this case is susceptible to settlement.  Within
14 days from the date of today's order, counsel for both sides
(or the parties themselves) shall discuss the possibility of
settlement.  If settlement does not appear likely, the parties
must promptly complete discover in accordance with the date set
herein.

IT IS THEREFORE ORDERED that defendant's motion to dismiss
[5-1] is granted in part and denied in part.  Counts I and II of
the Complaint are dismissed in part to the extent they seek
damages for expenses related to plaintiff retaining a Chief
Accounting Officer and additional auditor.  Count III of the
Complaint is dismissed in its entirety.  Within 20 days, defendant
shall answer the remaining allegations of the Complaint.  All

discovery is to be completed by April 27, 2004.  A status hearing will be held on April 28, 2004 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:  MARCH  18  , 2004